IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| WILLIE J. SMITH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, COMMISSIONER ) <br> OF SOCIAL SECURITY ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 3:10-540-JFA-JRM <br><br><br> **REPORT AND RECOMMENDATION** |

This case is before the Court pursuant to Local Civil Rules 73.02(b)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB and Supplemental Security Income ("SSI") on January 24, 2006. (Tr. 154-56, 159-63). He alleged disability since January 1, 2003[1] (Tr. 154, 159) due to a heart attack, an aneurysm, hypertension, gout, and diabetes (Tr. 175, 187, 197). Both claims were denied initially, and Plaintiff requested reconsideration only with respect to his application for DIB. Tr. 92.[2] The Commissioner denied Plaintiff's request for reconsideration, and Plaintiff then requested a

---

[1] The claimant, via a letter from his attorney at the time, later amended the alleged onset date of disability to September 1, 2006. Tr. 64.

[2] Plaintiff's application for SSI apparently was denied because of excess resources. See Tr. 22.

hearing before an Administrative Law Judge (ALJ). On June 11, 2008, the ALJ issued a fully favorable decision without a hearing. Tr. 60-69.

However, on August 18, 2008, the Social Security Administration, Office of Central Operations, sent a memorandum to the Social Security Administration, Office of Disability Adjudication and Review, stating it could not process the ALJ's June 2008 decision because Plaintiff was not insured for purposes of DIB as of the onset date established by the ALJ as Plaintiff last met the requirement that he be insured on December 31, 2003, not December 31, 2006. Tr. 81. On November 14, 2008, the Appeals Council notified Plaintiff it was reopening the ALJ's June 2008 decision. Tr. 83-86.

On December 24, 2008, the Appeals Council issued an unfavorable decision finding that the record showed Plaintiff was last insured for purposes of DIB on December 31, 2003, and therefore, Plaintiff did not qualify for a period of disability beginning September 1, 2006. Additional information was then submitted by Plaintiff, and as a result, the Appeals Council reversed the ALJ's June 2008 decision and remanded the case to the ALJ for further proceedings to determine whether the claimant was disabled prior to his date last insured, December 31, 2003. Tr. 74-75.

Upon remand, hearings before the ALJ were held on June 26 and July 22, 2009, at which Plaintiff (without counsel)[3] appeared and testified. On July 30, 2009, the ALJ issued a decision finding that the Plaintiff was not disabled from the alleged onset date (January 1, 2003) to the time Plaintiff was last insured (December 31, 2003). The ALJ found that Plaintiff was not disabled under

---

[3]Plaintiff's prior counsel withdrew from representation prior to the June 2009 hearing. See Tr. 22, 35. He is currently represented by a different attorney.

the Social Security Act because Plaintiff did not have any "severe" impairments during the relevant time period.

The ALJ found (Tr. 15-17):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2003.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2003, through his date last insured of December 31, 2003 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following medically determinable impairments: hypertension and gout (20 CFR 404.1521 *et seq.*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2003, the alleged onset date, through December 31, 2003, the date last insured (20 CFR 404.1520(c)).

Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on January 8, 2010, making the decision of the ALJ the final decision of the Commissioner. Plaintiff filed this action on March 5, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) and <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL EVIDENCE

Plaintiff was treated by Dr. Billy Lance with medications for hypertension and lumbosacral sprain, from 1988 to 1990. Dr. Lance also treated Plaintiff for injuries sustained in an automobile accident, including cervical sprain and moderate lumbosacral strain. Tr. 659-662, 664. Dr. James Dantzler and Dr. Guy Bibeau prescribed medications for Plaintiff for arthritis, gout, and hypertension between February and August 1995. Tr. 609, 611-616, 629, 631-636. In November and December 1996, Dr. Carl McCord prescribed medications for Plaintiff's hypertension and gout. Tr. 607-608, 627-628. In November 1998, Dr. Tricia Witherspoon diagnosed Plaintiff with hypertension, gout exacerbation, and history of ethanol abuse. Tr. 605-606, 625-626.

On March 28, 2000, Dr. Douglas Brooks diagnosed Plaintiff with gout and hypertension under "horrible" control. He noted that Plaintiff had not been taking his blood pressure medications as prescribed. Plaintiff said he normally responded well to Colchicine or Indocin (anti-inflammatory medications) for treatment of gout, but he was out of both. Dr. Brooks prescribed Toradol (an anti-inflammatory), Indocin, Colchicine, and Norvasc (an anti-hypertensive). Tr. 604, 624.

On May 8, 2002, Plaintiff complained to Dr. Alaric Van Dam, an orthopaedist with Moore Orthopaedic Clinic, of right arm pain. Plaintiff reported that he had full range of motion and no difficulty doing his usual activities, but bumped his elbow often while doing his mechanical work. Upon examination, it was noted that Plaintiff had no gross deformity or atrophy other than swelling

in his right olecranon.[4] Plaintiff had full range of motion in his right upper extremity, non-tender wrist range of motion, intact sensation, and full motor strength. Plaintiff had full range of motion of his elbow and supination pronation as well as flexion extension. There was no bicipital tenderness or medial lateral joint line tenderness. Dr. Van Dam diagnosed Plaintiff with left wrist pain which was resolved. He thought that Plaintiff's condition was possibly secondary to a gout flare and right olecranon bursitis. Dr. Van Dam aspirated Plaintiff's right olecranon bursa and administered a Lidocaine injection. Tr. 655-657.

Plaintiff has presented no record of medical treatment from May 8, 2002 until nearly a year later, on April 21, 2003. On that date, he was examined by Dr. Rutkumar Jani of Spring Valley Family Practice for complaints of pain in his right knees and elbows with right elbow edema. Dr. Jani diagnosed bursitis of Plaintiff's right elbow, hypertension, and gouty arthritis. He prescribed Vioxx (an anti-inflammatory medication, increased Plaintiff's Norvasc, and prescribed hydrochlorothiazide (an anti-hypertensive). Tr. 370.

On May 1, 2003, Dr. Jani diagnosed bursitis, performed arthrocentesis on Plaintiff's right elbow, and prescribed medications. Tr. 369. On July 22, 2003, Plaintiff reported to Dr. Jani that he had not taken his medications for two months. He complained of mild headaches for five to seven days. Examination revealed that Plaintiff had clear lungs, regular heart rate and rhythm, and normal extremities. Dr. Jani diagnosed malignant hypertension and ventricular hypertrophy, and prescribed Procardia, Norvasc, and hydrochlorothiazide. Tr. 368.

---

[4]The olecranon is "the proximal bony projection of the ulna at the elbow, its anterior surface forming part of the trochlear notch." Dorland's Illustrated Medical Dictionary 1305 (30th ed. 2003).

An echocardiogram ("EKG") at the South Carolina Heart Center on July 23, 2003 revealed that Plaintiff had mildly enlarged left ventricular size and hyperdynamic systolic function, moderate to severe left ventricular hypertrophy, and an estimated ejection fraction of greater than 65 percent.[5] The EKG showed grade II diastolic dysfunction, normal right ventricular size, normal systolic function, and normal atria. It also revealed structurally normal mitral, aortic, and pulmonic valves. There was possible hypertrophic obstructive cardiomyopathy. The EKG showed no pulmonary hypertension, masses, thrombi, vegetations, pericardial effusion, or subaortic gradient. Tr. 371.

Plaintiff did not return to Dr. Jani until December 11, 2003, at which time Dr. Jani noted that Plaintiff was not compliant with his anti-hypertensive medications (hydrochlorothiazide and Norvasc). Dr. Jani diagnosed Plaintiff with severe hypertension and non-compliance. Norvasc and hydrochlorothiazide were prescribed. Dr. Jani instructed Plaintiff to monitor his blood pressure and urged him to take his medications regularly. Tr. 367. There is no indication that Plaintiff sought medical treatment between December 11, 2003 and December 2004 (when he next saw Dr. Jani - see Tr. 366).

## HEARING TESTIMONY

At the June 26, 2009 hearing, the ALJ explained to Plaintiff that he needed to show he was disabled prior to his last date insured of December 31, 2003. The ALJ rescheduled the hearing to allow Plaintiff to obtain medical evidence for the time period prior to his last date insured.

---

[5]Ejection fraction is:
the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole; it is the stroke volume divided by the end-diastolic volume, often expressed as a percentage. It is normally 65 [plus or minus] 8 percent; lower values indicate ventricular dysfunction.
Dorland's at 734.

6

Additionally, the ALJ noted that Plaintiff's prior counsel had withdrawn and the ALJ informed Plaintiff that he could try to get some representation for the rescheduled hearing. See Tr. 22, 26.

Plaintiff testified at the July 22, 2009 hearing that, prior to his date last insured, he had gout, diabetes, and hypertension. He said he had problems with his elbows and wrists in 2002, and that during gout attacks in his elbows and wrists he could not function. Tr. 41-43. Plaintiff described his gout as starting in his foot and then moving to his ankles and knees. He testified that he had diabetes since 2000, which he first tried to treat with diet and exercise. In 2003, his biggest problems were with his gout flare-ups. Tr. 43-44.

Plaintiff testified he could not do anything and could not move his joints at all during his gout flare-ups. He said that his wife had to take care of him. His gout in 2003 mainly affected his elbows, wrists, and knees. He stayed in bed during gout flare-ups which occurred on approximately a monthly basis and lasted for three to four weeks. Tr. 46. In 2003, Plaintiff's medications included Allopurinol, Colchicine, Indocin, and Tylenol. He testified that his condition started with pain in his big toe when he was in his teens, but worsened as he got older. Tr. 51.

## DISCUSSION

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence because he was suffering from disabling gout and hypertension prior to his last date insured. He also alleges that the ALJ erred in evaluating his credibility. The Commissioner contends that the final decision that Plaintiff was not disabled within the meaning of the Social Security Act on or before December 31, 2003 is supported by substantial evidence[6] and free of legal error.

---

[6]Substantial evidence is:
  evidence which a reasoning mind would accept as sufficient to support a
                                                                    (continued...)

7

A.      Substantial Evidence

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence because he found that Plaintiff had no severe impairments prior to his date last insured. Specifically, he argues that it is clear from the medical records that his debilitating problems with gout and hypertension began prior to his last date insured. The Commissioner contends that the ALJ's determination that Plaintiff did not have any severe impairments prior to his date last insured and thus was not disabled is supported by substantial evidence.

It is the claimant's burden to show that he had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987). A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" means:

the abilities and aptitudes necessary to do most jobs. Examples of these include –

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

---

[6](...continued)
particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

8

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Here, the ALJ properly considered Plaintiff's impairments which were present during the period at issue, including his hypertension and bursitis and/or gout, and determined that they were not severe impairments at that time. Plaintiff argues that treatment notes from the Moore Orthopaedic Clinic (Dr. Van Dam) in 2002 and from the Spring Valley Family Practice (Dr. Jani) in 2003 show that he had debilitating problems with gout and hypertension that began prior to his date last insured. The 2002 Moore Orthopaedic Clinic notes, however, do not show any work-related limitations, nor any limitations that were disabling. In May 2002, Dr. Van Dam found that Plaintiff had no gross deformity or atrophy other than swelling in Plaintiff's right olecranon. Full range of motion in Plaintiff's right upper extremity, intact sensation, and full motor strength were noted. Plaintiff had full range of motion of his elbow, no bicipital tenderness, and no medial lateral joint tenderness. "Resolved" left wrist pain was diagnosed. Tr. 655-657.

There is also no evidence of any work-related limitations from the 2003 Spring Valley Family Practice notes. Dr. Jani diagnosed bursitis of Plaintiff's right elbow and gouty arthritis in April 2003 for which he prescribed Vioxx. Tr. 370. By July 2003, Plaintiff's extremities were noted to be within normal limits. As noted by the ALJ (Tr. 17), there was no evidence of any further flare-up of this condition through at least December 2003, and no evidence of any treatment for any condition again until December 2004. In December 2003, Dr. Jani diagnosed Plaintiff with severe

9

hypertension, but noted (as he had in July 2003 - Tr. 368) Plaintiff's noncompliance with treatment (the taking of prescribed anti-hypertensive medications). Tr. 367.

Further, as noted above, Plaintiff testified that he suffered from gout since his teens. The medical records indicate that Plaintiff was diagnosed with and prescribed medication for hypertension as far back as 1988. Tr. 664. There is no indication that his conditions significantly worsened at the time of his alleged onset of disability (January 2003) and he worked for many years despite these impairments. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)(claimant who worked with impairments over a period of years without any worsening of condition was not entitled to disability benefits); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1972)(finding claimant was not disabled where she had eye problems of long standing, worked regularly for years despite the problem, and had no significant deterioration).

Plaintiff testified that he was diagnosed with diabetes in 2000. He, however, also stated that this was initially treated with diet and exercise. As noted by the ALJ (Tr. 17), Plaintiff was first diagnosed with diabetes at Spring Valley Family Practice in March 2005 (well after Plaintiff's last date insured). Tr. 365.

Plaintiff argues that he was unable to engage in substantial gainful activity after December 2003 as shown by his increasing problems with hypertension in May 2005, an aneurysm in 2006, and a letter from his physician in 2007 stating that his gout was "a hindrance to heavy labor." Plaintiff's Brief at 3. Whether Plaintiff could work in May 2005, 2006, or in 2007, however, is irrelevant, as these incidents pertain to a period well after Plaintiff's date last insured. To qualify for DIB, Plaintiff has to prove that he became disabled prior to the expiration of his insured status. See Johnson v. Barnhart, 434 F.3d 650, 655-565 (4th Cir. 2005).

Plaintiff appears to also argue that he was not given an opportunity to acknowledge or oppose the amendment of his alleged onset date (when it was amended to September 2006 - see Tr. 64) because there was no hearing prior to the ALJ's first (June 2008) decision. Plaintiff, however, acknowledged at the June 2009 hearing that his prior counsel presented a strategy to amend Plaintiff's alleged onset date in order to obtain benefits quicker. See Tr. 26. At any rate, the case was remanded to the ALJ, Plaintiff's alleged onset date was changed back to January 2003, and Plaintiff was given the opportunity to present medical evidence and to attend hearings before the ALJ to attempt to show that he was disabled prior to December 2003.

The undersigned has scrutinized the record to ascertain whether the ALJ carefully protected the rights of Plaintiff, who was unrepresented at the 2009 hearings. See Sims v. Harris, 631 F.2d 26 (4th Cir. 1980)(ALJ required to assume a more active role in hearing where a claimant is unrepresented); Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986). Here, the ALJ did so. At each hearing, the ALJ informed Plaintiff that Plaintiff's counsel had withdrawn and Plaintiff had the right to be represented. At the June 26, 2009 hearing, Plaintiff indicated that he knew his counsel had withdrawn. Tr. 22. The ALJ stated that if Plaintiff wanted to try to get some representation he could do so. At the June 2009 hearing, the ALJ stated that the purpose of the hearing was to determine whether Plaintiff was disabled prior to December 31, 2003 (Plaintiff's last date insured). Tr. 23. The ALJ explained (and Plaintiff acknowledged) that the ALJ was interested in obtaining medical information prior to December 2003 so he could determine whether Plaintiff had impairments and limitations that made Plaintiff disabled. See Tr. 24, 38-29. The hearing was rescheduled for the next month to give Plaintiff an opportunity to review the information submitted and to submit additional information. See Tr. 29-30.

At the July hearing, the ALJ stated "as I indicated to you [Plaintiff], even though [your prior counsel has] withdrawn, you have a right to be represented in these matters. Do you desire to proceed today without representation?" Tr. 35. Plaintiff answered "Yes, sir." Id. The ALJ inquired into Plaintiff's age, education, and past vocational experiences. He asked Plaintiff about each of Plaintiff's impairments during the relevant time periods, Plaintiff's limitations from them, and Plaintiff's medical treatment. Additionally, the ALJ inquired about Plaintiff's lack of earnings for certain periods (which might have affected his last date insured) for which he was reportedly working and Plaintiff stated that although he worked during those times he may not have had significant earnings because his business expenses were more than his earnings. See Tr. 40, 49.[7]

B.     Credibility/Pain

Plaintiff appears to argue that the ALJ erred in discrediting his allegations of pain. Specifically, he argues that the ALJ should have found credible "his testimony at the July 2009 hearing that before December 2003 he had flare-ups of gout that put him in bed and that lasted 3 to four weeks at a time (Tr. P. 46)." Plaintiff's Brief at 2-3. The Commissioner contends that the ALJ's credibility finding is supported by the objective medical evidence, the inconsistencies between Plaintiff's subjective complaints and the objective medical evidence, Plaintiff's lack of treatment for his allegedly disabling impairments, and Plaintiff's noncompliance with prescribed treatment.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of

---

[7]Plaintiff has presented nothing to dispute that his correct last date insured is December 31, 2003 (rather than December 31, 2006).

12

pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered Plaintiff's credibility by using the two-part test outlined above and considering the medical and non-medical record. The medical record, as detailed above, supports the ALJ's decision. The ALJ's decision to discount Plaintiff's credibility based on his noncompliance is also supported by substantial evidence. A failure to follow prescribed treatment may bring the claimant's motivation into question and may support a decision to deny benefits. English v. Shalala, 10 F.3d 1080, 1083-1084 (4th Cir. 1993); see also Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993); 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled..."); see also Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)(ALJ may consider a claimant's failure to follow treatment advice as a factor in assessing claimant's credibility); Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995)(when assessing credibility, the ALJ may properly consider a claimant's failure to keep appointments). In March 2000, Dr. Brooks noted that Plaintiff had not been taking his blood pressure medications as prescribed. Tr. 604, 624. In July 2003, Plaintiff told Dr. Jani that he had not taken his prescribed

medications for two months. Tr. 368. In December 2003, Dr. Jani noted that Plaintiff was not compliant with his medications. Tr. 367.

Plaintiff's lack of treatment also may be considered in evaluating whether an impairment is disabling. See Mickles v. Shalala, 29 F.3d at 930 (finding that inconsistency between the level of claimant's treatment and her claims of disabling pain supported the conclusion that claimant was not credible). There is no evidence that Plaintiff underwent treatment for any reason between December 11, 2003 and December 2004. There is also no evidence of treatment for gout between May 2002 until almost a year later (in April 2003); and no evidence of treatment for gout again from May 2003 until December 2003.

## **CONCLUSION**

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this

14

Court cannot reverse that decision merely because the evidence would permit a different conclusion.

Shively v. Heckler, supra.  It is, therefore,

      RECOMMENDED that the Commissioner's decision be **affirmed**.

                                  Joseph R. McCrorey  
                                  United States Magistrate Judge

May 10, 2011  
Columbia, South Carolina

15